SIMON REINEMAN, APPELLEE, v. THE COVINGTON, COLUMBUS AND BLACK HILLS RAILROAD COMPANY, AND OTHERS, APPELLANTS.

1. **Constitutional Law**: AID TO RAILROAD COMPANIES: LEGISLATIVE DISCRETION. Until the adoption of the constitution of 1875, the whole matter of municipal aid to works of internal improvement was within the sole control of the legislature, and subject to no restraint other than such as that body saw fit to impose.

2. ———. Section 2 of article XII of the constitution is to be taken as restrictive only upon the exercise of legislative discretion in the authorization of county and municipal indebtedness in aid of railroads and other internal improvements. It fixes a boundary beyond which the legislature cannot go, but within which its authority is still supreme.

3. ———. The act of February 15th, 1869, as amended March 3d, 1870, and February 17th, 1875, enabling counties, cities, and precincts to issue bonds to aid works of internal improvement, in force at the adoption of the new constitution, is not in conflict with section 2, article XII, of that instrument, and is still in full force.

4. ———. As the law stands there is no warrant for creating a county indebtedness, in aid of internal improvements, exceeding in the aggregate ten per cent of the assessed value of the taxable property within the county. And even this must have been authorized by at least two-thirds of all the votes cast on the proposition to extend such aid.

5. ———. Where a county votes aid to a railroad company in excess of the amount authorized by law, it is simply a void act, conferring no authority on the county commissioners to issue the bonds of the county in any amount whatever.

THIS case came here upon appeal on part of defend-ants from a decree rendered by VALENTINE, J., in the district court for Cuming county. The cause was heard upon a demurrer to the petition, demurrer overruled, and injunction, to restrain issuance of bonds, made perpetual.

*Joy & Wright, James Britton,* and *O. P. Mason,* for appellant.

*J. B. Barnes,* for appellee, with whom was *John M. Thurston,* for Union Pacific Railroad, intervening by leave of court.

LAKE, J.

This is an appeal from the district court for Cuming county. The action was brought to obtain an injunction restraining the board of county commissioners of Wayne county from issuing certain bonds voted by the electors of the last named county to aid in the construction of a railroad by the defendant company, into and through that county. These bonds were voted at an election held since the adoption of our present constitution, and they amount to more than ten per cent., being in fact nearly fifteen per cent. of the assessed value of the taxable property within the county when the election took place. And the petition shows that when said bonds were voted: " There was no indebtedness of the said county or any of the subdivisions thereof for the construction of railroads or other works of internal improvement."

The principal questions presented for our consideration, and the only ones which we shall determine, call for a construction of Sec. 2, Art. XII, of the constitution, which declares that: " No city, county, town, precinct, municipality, or other subdivision of this state, shall ever make donations to any railroad or other work

of internal improvement, unless a proposition so to do shall have been first submitted to the qualified electors thereof at an election by authority of law; *provided*, that such donations of a county, with the donations of such subdivisions in the aggregate shall not exceed ten per cent of the assessed valuation of such county; *provided, further*, that any city or county may, by a two-thirds vote, increase such indebtedness five per cent in addition to such ten per cent."

It will not be claimed that, in the absence of any law either statutory or constitutional, the electors of a county or municipality could impose an indebtedness of this sort that would be binding upon the inhabitants thereof. Very clearly they could not. Neither will it be denied we think, that, in the absence of all constitutional restriction, the legislature could, by a suitable enactment, authorize such aid in any amount which the people might see fit to vote. Indeed, until the adoption of our present constitution this whole matter of municipal aid to works of internal improvement was within the sole control of the state legislature, and subject to no restraint other than such as that body in its wisdom saw fit to impose. This being so, the section of the constitution above quoted must be considered as restrictive only upon the exercise of legislative discretion in the authorization of county and municipal indebtedness to aid in the construction of railroads and other works of internal improvement. It fixes a boundary beyond which the legislature cannot go, but within which its authority is still supreme. The constitution does not, of its own force and independently of the legislature, assume to authorize the people to vote such aid, but, on the contrary, the necessity of legislative permission and direction is expressly recognized. It in plain terms declares that no such donation shall be made unless a proposition to do so shall be first submitted to the quali-

fied electors of the district, "at an election by authority of law." The words, "*authority of law*," can refer only to an act of the legislature—the law-making power under the constitution—duly passed and approved.

At the time of the adoption of our present constitution the act of February 15th, 1869, as amended March 3d, 1870 (Gen. Stat., 448), and again February 17th, 1875 (Laws 1875, p. 87), enabling counties, cities, and precincts to issue bonds to aid in the construction of works of internal improvement, was in full force. By the first section of this act the total aid that could be afforded was limited to ten per cent of the assessed value of all the taxable property in such county or city. And by the amendment of February 17th, 1875, a majority of two-thirds of all the votes cast upon the proposition to extend the aid was necessary to its validity. This law is in no particular in conflict with the section of the constitution under consideration. It is clearly within the limits there fixed for the exercise of legislative discretion, and must be given full force and effect. We conclude therefore that, until the legislature shall by suitable act change the existing statutory law so as to authorize it, there is no warrant for creating a county indebtedness in aid of internal improvements, exceeding in the aggregate ten per cent of the assessed value of the taxable property within the county furnishing such aid. And further, that by the amendment of February 17th, 1875, such aid must have been authorized by at least two-thirds of all the votes cast on the proposition to extend such aid.

It was urged in argument with much plausibility by counsel for the defendant that, in addition to the act of 1869 as amended, no further legislation was necessary to enable a county to extend its aid to the full constitutional limit, viz: fifteen per cent of the assessed value of its taxable property. But this view can be sustained

only on the theory that the constitution of its own force invests counties with some inherent power entirely beyond the control of the legislature, which we regard as wholly untenable. As before shown, this constitutional provision is essentially restrictive in its operation, but, within the boundaries which it sets, the whole matter is left to the legislative authority, which, by the constitution itself (Sec. 1, Art. III), is vested in the senate and house of representatives.

It was further urged that even if it should be held that the proposition as submitted to the electors was in excess of the amount authorized to be voted, still to the amount of at least ten per cent of the valuation it was valid, and to that extent the contract between the county and the railroad company should be upheld. In support of this proposition we are referred to several authorities, particularly the case of *Leavitt v. Palmer*, 3 N. Y., 19, which hold to the well established doctrine, that where a contract contains distinct provisions, some of which are legal and others illegal, the former, under certain circumstances, will be upheld, although the latter are declared void. 1 Parsons on Contracts, 380. But the case before us is clearly not within this rule. The proposition submitted to the electors was an entirety, and indivisible. It exceeded the statutory limit, and was therefore wholly unauthorized. The election was simply a void act, conferring no authority whatever upon the board of county commissioners to issue the bonds of the county in any amount whatever.

In the view which we take of the case it becomes unnecessary to determine whether, under the constitution, even if the legislature had authorized it, the whole amount of the fifteen per cent of the valuation can be donated to a single enterprise and be voted at one election, and therefore we abstain from the expression of an opinion upon that question. But it may not be entirely

out of place to suggest that we have not as yet been able to discover how it is possible to increase an indebtedness which as yet has no existence.

The judgment of the court below, being in accord with the views of this court, is affirmed, and the injunction heretofore granted is made perpetual.

JUDGMENT ACCORDINGLY.